UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-CR-60144-EA

**UNITED STATES OF AMERICA**

vs.

**SERGEI MARGULIAN and
DAMARY MENDEZ,**

        **Defendants.**
_____/

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND BOND CONDITIONS

The United States respectfully submits this response in opposition to the Defendant Sergei Margulian's motion to modify his bond conditions. [ECF No. 78]. The United States specifically opposes the requests to change Defendant Margulian's curfew, remove his ankle monitor, and work in aesthetics.

## PROCEDURAL BACKGROUND

On June 17, 2025, Defendant Margulian and co-defendant, Damary Mendez, were charged by Indictment with one count of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846. [ECF No. 3]. Defendant Margulian was charged with six counts of distributing a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and Defendant Mendez was charged with two of those counts. *Id*. The Indictment alleges that Defendant Margulian, with assistance from Defendant Mendez, prescribed at least 2.9 million pills of oxycodone to patients of the pain management clinics that Defendant Mendez managed. *Id*. On June 20, 2025, both Defendants were arrested.

1

Defendant Margulian's pre-trial detention hearing occurred on June 24, 2025, before this Court. [ECF No. 23]. This Court determined a $500,000 personal surety bond signed by three co-signers was appropriate, restricted Defendant Margulian from working in the health care field, required surrender of his license, placed him on GPS monitoring, and imposed a curfew between 8:00pm to 7:00am. [Detention Hearing Transcript at 63:9-15; 65:13-17; 66:6-10; 67:14-18]. In prohibiting Defendant Margulian from working in the health care field, the Court noted that the condition was "necessary to assure the safety of the community" and that Defendant Margulian's conditions are stricter than Defendant Mendez's based on their respective roles in the case.[1]  *Id.*

## LEGAL STANDARD

The judge that initially set the conditions of release "may at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3).  A defendant may file a motion with the court having original jurisdiction over the offense to amend the conditions of release.  18 U.S.C. § 3145(a)(2).  The context for modification of conditions of release may involve new information not known at the time of the initial detention hearing.  18 U.S.C. § 3142(f).

In determining whether there are conditions of release that can be imposed to reasonably assure the appearance of the defendant and also protect the community, the Court takes into account numerous factors, including, but not limited to, the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and the history and characteristics of the defendant.  18 U.S.C. § 3142(g).

---

[1] Defendant Mendez was released on a $500,000 personal surety bond with one co-signer, was prohibited from working in the health care field, and was placed on mobile location monitoring. [ECF No. 19].

## ARGUMENT

**Curfew**: Defendant Margulian requests a modification to his curfew from 8:00pm to 7:00am to 11:30pm to 6:00am and removal of his GPS monitor in exchange for mobile location monitoring. While Defendant Margulian offers no basis for the requested change in curfew, the Government believes that a reasonable compromise would be a curfew from 10:00pm to 7:00am.

**Electronic Monitoring**: Defendant Margulian also offers no basis for removal of the GPS monitor. Instead, Defendant Margulian contends that he is not a flight risk and does not need any curfew or any monitoring. This is false.

As an initial matter, there is a presumption that individuals who unlawfully dispense opioids will be detained. 18 U.S.C. § 3142(e)(3)(a). During the Pre-Trial Detention hearing, the Government presented evidence that Defendant Margulian is a dual citizen with international ties and an extensive international travel history. Evidence corroborates that Defendant Margulian prescribed thousands of oxycodone 30mg pills while on various international trips without examining the patients. The Government also presented evidence that HHC, Sunrise, and Sunset were primarily cash businesses and that Defendant Margulian's financial records did not show corresponding deposits, indicating he may have the means to flee. If convicted, Defendant Margulian faces 324 to 405 months' imprisonment and lengthy sentences are probative of a defendant's risk of flight. *United States v. Souffrant*, 2009 WL 10641682, at *2 (S.D. Fla. Sept. 15, 2009); United States v. Raya, No. 25-MJ-2489, 2025 WL 1780544, at *3 (S.D. Fla. Mar. 25, 2025). Hearing this evidence, this Court imposed an appropriate curfew and a GPS ankle monitor. Defendant Margulian is confined to his home for only eleven (11) hours a day and can travel and conduct day-to-day activities for the remaining thirteen hours (13). As noted above, the

government does not oppose a less restrictive curfew from 10:00pm to 7:00am—thereby confining defendant Margulian to his home only nine (9) hours each day.

Mobile location monitoring requires a defendant to download a mobile application and input biometric data. Probation officers decide when to conduct "checks" by sending an alert to the defendant's application that requires the defendant enter their biometrics permitting the probation officer to confirm their location. Unlike GPS monitoring, mobile location monitoring does not provide a live time location and requires the probation officer actively to request a defendant's location. At the Pre-Trial Detention Hearing, the Court had the option to impose mobile location monitoring rather than an ankle GPS monitor but chose not to. Defendant Margulian's co-defendant was given the less strict location monitoring, and the Court noted it was appropriate given her role in the alleged crime. Recognizing the scope of Defendant Margulian's conduct, this Court imposed a GPS ankle monitor.

Given the alleged conduct at issue, Defendant Margulian's dual-citizenship, travel history, his resources, and the potential sentence if convicted, the Government respectfully request that Defendant Margulian remain on GPS ankle monitoring.

**Work in Aesthetics**: Defendant Margulian also requests permission to work in aesthetics, citing the Bail Reform Act provision that requires the Court release a defendant "subject to the least restrictive . . . condition, or combination of restrictions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). The Court's previously issued bond condition prohibiting Defendant Margulian from working in the health care field, in combination with the other restrictions, ensures the safety of the community in the least restrictive way absent

4

incarceration. For those same reasons, Defendant Margulian should not be permitted to work in the health care field in any capacity.

Defendant Margulian falsely claims that aesthetics has nothing to do with the allegations in this case. In fact, the Sunrise clinic began as an aesthetics business and slowly transitioned to a pain management clinic where Defendant Margulian prescribed hundreds of thousands of oxycodone 30mg pills to patients in exchange for cash. Defendant Margulian owns multiple aesthetics companies, including Aestheta. According to the review of bank records, it appears that Defendant Margulian used Aestheta to launder proceeds from HHC, Sunrise, and Sunset. Permitting Defendant Margulian to operate the same type of practice where he started the conduct at issue and that he used to launder criminal proceeds would fail to protect the community.

The Government routinely requests, and courts in the Southern District of Florida routinely grant, the special condition that those accused of health care related crimes be prohibited from working in health care field. This is true for not only practitioners, but also billers, marketers, and administrative staff. Defendant Margulian has been indicted for conspiracy and distribution of controlled substances, a crime that he used his medial license to perpetuate. Defendant Margulian should be treated from the same as similarly situated individuals, including his co-defendant, who has the same bond condition.

**Sale of Davie Medical Practice**: The Government does not oppose the Defendant's request to sell his aesthetics practice that is unrelated to the conduct at issue involving Healing Health Center, LLC ("HHC"), Sunrise Healing Health Center, LLC ("Sunrise"), and Sunset Healing Health Center ("Sunset") to fund his legal defense or pay for his living expenses. The Government objects to any sale of HHC, Sunrise or Sunset.

## CONCLUSION

The United States requests that the Court: (1) deny Defendant's request for removal of his GPS monitor or mobile location monitoring; and (2) deny Defendant's request to work in aesthetics, upholding the bond condition prohibiting him from working in the health care field in any capacity. The United States does not oppose: (1) a modified curfew of 10:00pm to 7:00am; and (2) the sale of the Davie practice.

Dated: October 31, 2025

Respectfully submitted,

LORINDA LARYEA
ACTING CHIEF, FRAUD SECTION

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

/s/ Angela J. Benoit
Angela J. Benoit
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
FL Special Bar # A5502549
Tel: (202) 617-4361
Email: angela.benoit.lewis@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 31, 2025, a true and correct copy of the foregoing was filed and served on all parties of record via the CM/ECF system.

/s/ Angela J. Benoit
Angela J. Benoit
Trial Attorney
U.S. Department of Justice